

FILED
5/29/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 18 CR 261 |
| v. | |
| EARRIOUS MOORE | Judge Elaine E. Bucklo |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant EARRIOUS MOORE, and his attorney, MICHAEL I. LEONARD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with five counts of carjacking, in violation of Title 18, United States Code, Section 2119 (Counts One, Three, Five, Seven, and Nine), and five counts of using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c) (Counts Two, Four, Six, Eight, and Ten). On February 12, 2024, the government moved to dismiss Counts Eight and Ten, which the Court granted on February 13, 2024.

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count One, which charges the defendant with carjacking, in violation of Title 18, United States Code, Section 2119(1); Count Five, which charges the defendant with carjacking, in violation of Title 18, United States Code, Section 2119(1); Count Six, which charges defendant with using, carrying, and brandishing a firearm during and in relation to a crime of violence, namely, the carjacking charged in Count Five of the indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii); and Count Nine, which charges defendant with attempted carjacking resulting in serious bodily injury, in violation of Title 18, United States Code, Section 2119(2). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

### Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One, Five, Six, and Nine of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a. With respect to Count One of the indictment:

On or about April 26, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, defendant EARRIOUS MOORE, with the intent to cause serious bodily harm, took by force, violence, and intimidation, a motor vehicle, namely, a 2011 Jeep Patriot Sport, that had been transported, shipped, or received in interstate commerce, from the person or presence of another, in violation of Title 18, United States Code, Section 2119(1).

More specifically, on or about April 26, 2018, at approximately 4:15 p.m., MOORE approached a red 2011 Jeep Patriot Sport (the "Jeep") on West Jackson Boulevard in Chicago, which was being driven by Victim A and which contained Individuals A, B, and C. MOORE pulled out a loaded .40 caliber Smith & Wesson semi-automatic pistol bearing serial number DVR9642 with an extended magazine (the "Smith & Wesson") and pointed the pistol at Victim A. MOORE said, "Get the fuck out of the car and give me everything you got and drop your cell phones." In response to MOORE's demand, Victim A, and Individuals A, B, and C all exited the Jeep. MOORE again demanded that Individual B and Individual C give him their cell phones, at which time Individual B threw Individual B's cell phone at MOORE, who took the cell phone. MOORE then drove away in the Jeep.

b. With respect to Counts Five of the indictment:

On or about April 26, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, defendant EARRIOUS MOORE, with the intent to cause serious

3

bodily harm, took by force, violence, and intimidation, a motor vehicle, namely, a 2016 Ford Escape SE, that had been transported, shipped, or received in interstate commerce, from the person or presence of another, in violation of Title 18, United States Code, Section 2119(1).

More specifically, on or about April 26, 2018, MOORE approached Victim C, who was driving a 2016 Ford Escape SE (the "Ford") in a parking lot located on West Chicago Avenue in Chicago. MOORE approached the driver's side of the Ford, brandished and pointed the Smith & Wesson at Victim C, and told Victim C to get out of the car. Victim C complied and exited the Ford. MOORE then entered the Ford and drove away from the area.

      c.      With respect to Counts Six of the indictment:

On or about April 26, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, defendant EARRIOUS MOORE, did knowingly use, carry, and brandish a firearm, namely, a loaded .40 caliber Smith & Wesson semi-automatic pistol bearing serial number DVR9642 with an extended magazine, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, taking a motor vehicle by force, violence and intimidation with the intent to cause serious bodily harm, in violation of Title 18, United States Code, Section 2119, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii)

More specifically, as set forth in paragraph 6(b) above, on or about April 26, 2018, MOORE took a 2016 Ford Escape SE (the "Ford") from Victim C while in a

parking lot on West Chicago Avenue, in Chicago. During the taking of the Ford, MOORE brandished and pointed the Smith & Wesson at Victim C, and told Victim C to get out of the car.

        d.      With respect to Count Nine of the indictment:

On or about April 26, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, defendant EARRIOUS MOORE, with the intent to cause serious bodily harm, attempted to take a motor vehicle, namely a 2016 Mercedes Benz S550 4MATIC, that had been transported, shipped, or received in interstate commerce, from the person or presence of another, in violation of Title 18, United States Code, Section 2119(2).

More specifically, on or about April 26, 2018, at approximately 6:00 p.m., MOORE approached Victim F, who was sitting in a 2016 Mercedes Benz S550 4MATIC (the "Mercedes") on Lakeshore Drive in Chicago. MOORE pointed the Smith & Wesson at Victim F in an attempt to take the Mercedes by force, violence and intimidation. Victim F ducked and pressed the car accelerator in an attempt to escape. MOORE then fired the Smith & Wesson at Victim F, hitting Victim F in the left shoulder.

        7.      Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following offenses:

a. Stipulated Offense One:

On or about April 26, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, MOORE, with the intent to cause serious bodily harm, did attempt to take by force, violence, and intimidation, a motor vehicle, namely, a 2010 Nissan Maxima, that had been transported, shipped, or received in interstate commerce, from the person or presence of another, in violation of Title 18, United States Code, Section 2119(2).

More specifically, on or about April 26, 2018, at approximately 5:50 p.m., MOORE approached Victim D, who was driving a red 2010 Nissan Maxima (the "Maxima"), which was stopped at the intersection of Oak and Rush Streets in Chicago. MOORE approached the driver's side window of the Maxima, pointed the Smith & Wesson at Victim D's head, and told Victim D to get out of the car in an attempt to take the vehicle by force, violence, and intimidation. When Victim D did not exit the Maxima, MOORE fired the Smith & Wesson, striking Victim D in the right arm.

b. Stipulated Offense Two:

On or about April 26, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, defendant EARRIOUS MOORE, with the intent to cause serious bodily harm, took by force, violence, and intimidation, a motor vehicle, namely, a 2009 Jaguar XF, that had been transported, shipped, or received in interstate commerce,

from the person or presence of another, in violation of Title 18, United States Code, Section 2119(1).

More specifically, on or about April 26, 2018, at approximately 5:10 p.m., MOORE approached Victim B, who was sitting in the driver's seat of a 2009 Jaguar XF (the "Jaguar") in a parking lot located in the 1100 block of N. Milwaukee Avenue, in Chicago. MOORE approached the driver's side of the Jaguar, pointed the Smith & Wesson at Victim B, and said, "Get the fuck out of the car, I'm taking your car. Leave your phone." Victim B exited the Jaguar and left Victim B's phone, as instructed. MOORE then entered the Jaguar and drove away from the area. A short time later, MOORE crashed the Jaguar into several parked vehicles and abandoned the Jaguar in the area of 800 South Halsted, in Chicago.

<u>**Maximum Statutory Penalties**</u>

8.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count One carries a maximum sentence of 15 years of imprisonment. Count One also carries a maximum fine of $250,000. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b.     Count Five carries a maximum sentence of 15 years of imprisonment. Count Five also carries a maximum fine of $250,000. Defendant

further understands that with respect to Count Five the judge also may impose a term of supervised release of not more than three years.

      c.     Count Six carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 7 years. The sentence of imprisonment on Count Six is required to be consecutive to any other sentence imposed. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count Six also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Six, the judge also may impose a term of supervised release of not more than five years.

      d.     Count Nine carries a maximum sentence of 25 years of imprisonment. Count Nine also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Nine, the judge also may impose a term of supervised release of not more than five years.

      e.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

      f.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

      g.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is 7 years' imprisonment. In addition, defendant is subject to a total maximum fine of

$1,000,000, a period of supervised release, and special assessments totaling $400, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

9.    Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the

Guidelines Manual currently in effect, namely the November 2023 Guidelines Manual.

      b.     **Offense Level Calculations**.

<u>Count One</u>

      i.     The base offense level is 20, pursuant to Guideline § 2B3.1(a).

      ii.     Pursuant to Guideline § 2B3.1(b)(2)(B), a 6-level enhancement applies because a firearm was otherwise used.

      iii.     Pursuant to Guideline § 2B3.1(b)(5), a 2-level enhancement applies because the offense involved carjacking.

      iv.     The total offense level for Count One is therefore 28.

<u>Count Five</u>

      v.     The base offense level is 20, pursuant to Guideline §§ 2B3.1(a).

      vi.     Pursuant to application note 4 to Guideline § 2K2.4, the enhancement in Guideline § 2B3.1(b)(2) does not apply because defendant is subject to a statutory consecutive sentence under 18 U.S.C. § 924(c).

      vii.     Pursuant to Guideline § 2B3.1(b)(5), a 2-level enhancement applies because the offense involved carjacking.

      viii.     The total offense level for Count Six is therefore 22.

Count Six

   ix. Pursuant to Guideline § 2K2.4, the guideline sentence for Count Six is the term of imprisonment required by statute, which is required to run consecutive to any other term of imprisonment imposed on the defendant. The term of imprisonment required by statute is a seven-year mandatory minimum term under Title 18, United States Code, Section 924(c)(1)(A)(ii).

Count Nine

   x. The base offense level is 20, pursuant to Guideline §§ 2B3.1(a) and 2X1.1(a).

   xi. Pursuant to Guideline § 2B3.1(b)(2)(A), a 7-level enhancement applies because a firearm was discharged.

   xii. Pursuant to Guideline § 2B3.1(b)(3)(b), a 4-level enhancement applies because a victim sustained serious bodily injury.

   xiii. Pursuant to Guideline § 2B3.1(b)(5), a 2-level enhancement applies because the offense involved carjacking.

   xiv. The total offense level for Count Nine is therefore 33.

Stipulated Offense One

   xv. The base offense level is 20, pursuant to Guideline § 2B3.1(a) and 2X1.1(a).

   xvi. Pursuant to Guideline § 2B3.1(b)(2)(A), a 7-level enhancement applies because a firearm was discharged.

xvii.      Pursuant to Guideline § 2B3.1(b)(3)(b), a 4-level enhancement applies because a victim sustained serious bodily injury.

xviii.      Pursuant to Guideline § 2B3.1(b)(5), a 2-level enhancement applies because the offense involved carjacking.

xix.      The total offense level for Count One is therefore 33.

Stipulated Offense Two

xx.      The base offense level is 20, pursuant to Guideline § 2B3.1(a).

xxi.      Pursuant to Guideline § 2B3.1(b)(2)(B), a 6-level enhancement applies because a firearm was otherwise used.

xxii.      Pursuant to Guideline § 2B3.1(b)(5), a 2-level enhancement applies because the offense involved carjacking.

xxiii.      The total offense level for Count One is therefore 28.

Grouping

xxiv.      Pursuant to Guideline § 3D1.2(d), Counts One, Five, and Nine, and Stipulated Offenses One and Two are not grouped together and each offense is a separate group. Pursuant to Guideline §§ 2K2.4(b) and 3D1.1(b)(1), the grouping rules do not apply to the firearm offense (Count Six).

Combined Offense Level

xxv.      Count Nine has an offense level of 33. That group is assigned one unit, pursuant to Guideline § 3D1.4(a).

xxvi. Stipulated Offense One has an offense level of 33, which is equally as serious as Count Nine. Therefore, Stipulated Offense One is assigned one unit, pursuant to Guideline § 3D1.4(a).

xxvii. Count One and Stipulated Offense Two each have an offense level of 28, which is 5 levels less serious than Counts Nine . Therefore, Count One, Stipulated Offense One, and Stipulated Offense Two are each assigned one-half unit, pursuant to Guideline § 3D1.4(b).

xxviii. Count Five has an offense level of 22, which is 11 levels less serious than Count Nine. Therefore, Count Five is assigned zero units, pursuant to Guideline § 3D1.4(c).

xxix. The total number of units assigned is three. Pursuant to Guideline § 3D1.4, when the number of units is three, then three levels are added, and the offense level for the group that has the highest offense level (Count Nine) is increased by 3 levels. Therefore, the combined offense level is 36.

Acceptance of Responsibility

xxx. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        xxxi.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 2 and defendant's criminal history category is II:

        i.      On or about August 4, 2012, defendant was convicted of assault in the Circuit Court of Cook County, Illinois, and sentenced to one year of supervision. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

        ii.      On or about September 25, 2017, defendant was convicted of domestic battery in the Circuit Court of Cook County, Illinois, and sentenced to 18 months of supervision. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

        d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level for Counts One, Five, and Nine is 33, which, when combined with the anticipated criminal history category of II, results in an anticipated advisory sentencing guidelines range of 151 to 188 months' imprisonment as to Count Nine and 151 to 180 months' imprisonment as to Counts One and Five, pursuant to Guideline § 5G1.1(c)(1), in addition to any supervised release, fine, and restitution the Court may impose. Defendant further acknowledges that, with respect to Count Six, he is subject to a statutory minimum sentence of 7 years' imprisonment, which is required to run consecutively to any other term of imprisonment the Court may impose.

        e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall

not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

11. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

12. Each party is free to recommend whatever sentence it deems appropriate.

13. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full

restitution to victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

15. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

16. Defendant agrees to pay the special assessment of $400 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

18. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Forfeiture

19. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property used, in any manner or part, to commit or facilitate commission of the offense.

17

20.     Defendant agrees to forfeiture of the following specific property to the United States: one Smith & Wesson semi-automatic pistol bearing serial number DVR9642 with an extended magazine and associated ammunition. In doing so, defendant admits that the property described above facilitated the offense, as alleged in the indictment. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

21.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

22.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

23.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 18 CR 261.

24.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

25.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

      iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

20

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        viii.     With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

        b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

        26.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights

specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

27.    Defendant understands that he has the right to have the criminal charges set forth in the stipulated offenses brought within five years of the last of the alleged acts constituting the specified violations. By signing this document, defendant knowingly waives any right to have the charges set forth in the stipulated offenses brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which his admission to the charges set forth in the stipulated offenses occurred.

### Presentence Investigation Report/Post-Sentence Supervision

28.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

29.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income

tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

30.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

31.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

32. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

33. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

34. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in

24

accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

35.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

36.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

37.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: *5/29/2024*

ERIKA CSICSILA
Digitally signed by
ERIKA CSICSILA
Date: 2024.02.18
16:00:28 -06'00'

Signed by Erika Csicsila on behalf of
MORRIS PASQUAL
Acting United States Attorney

EARRIOUS MOORE
Defendant

*5/29/24*

ALEJANDRO G. ORTEGA
Assistant U.S. Attorney

MICHAEL I. LEONARD
Attorney for Defendant